Henry Clay Greenberg, J.
The action herein is one for a declaratory judgment. Plaintiffs seek adjudication of their rights in respect of sections 554-b and 554-c of the Code of Criminal Procedure and section 115 of the Insurance Law and other related statutes. The full measure of relief sought is *974 stated in the “ wherefore clause ” of the complaint and for brevity need not here be stated. The instant motion is by plaintiffs which, succinctly stated, seeks an injunction pendente lite against defendants so as to maintain the status quo of the parties as it existed prior to the development of the controversy involved herein, namely, prior to October 29, 1957. This will operate to stay and enjoin the Chief City Magistrate and other Magistrates of this city from pursuing their present procedure regarding applications for approval of bail bonds, which procedure was invoked pursuant to a certain Order No. 8 promulgated by the Director of Administration of the City Magistrates ’ Courts. Plaintiffs further request that said Magistrates, inter alia, desist from interfering with the presentation for approval of only executed bail bonds submitted by licensed agents of plaintiff insurance company.
The essential facts leading to the instant motion are in the main as follows: the corporate plaintiff (hereinafter referred to as plaintiff) is a mutual insurance company duly licensed to engage in the business of giving bail bonds in criminal actions. The plaintiffs, Catto and Suslow, are authorized agents of the plaintiff and duly licensed by the Superintendent of Insurance to act as agents in behalf of plaintiff in the conduct of its said bail bond business. The practices and procedures which existed prior to the development of this controversy respecting the execution and approval of a bail bond was as follows: Upon request of a defendant in a criminal action, or one in his behalf, to a duly licensed and authorized agent of the plaintiff, said agent would execute the bail bond in his behalf. The papers contained the bond, a power of attorney and an affidavit of bail. These papers would then be submitted to the appropriate Magistrate for approval. In certain instances (illness, appearance in another court, inconvenience of distance, etc.) it would be impossible for an agent retained by a defendant to appear in court. In such contingencies, the duly authorized agent would request another duly authorized agent to execute the bail bond and present it for approval. Both were agents of the same duly licensed surety company and in the instant case they were duly licensed and authorized agents of the plaintiff. Another method of assistance employed by agents in the conduct of their business would be to employ another authorized and duly licensed agent upon a weekly salaried basis. He would assist in executing bail bonds and their submission for approval. In these instances said agents and their employees also would be authorized and duly licensed agents of plaintiff.
*975 The first act committed by defendant Magistrates of which plaintiffs complain is in respect of the issuance by the Chief City Magistrate of what was known as Order No. 1. This order, plaintiffs claim, was an unwarranted attempt to control the legitimate activities of plaintiffs. Said order contained the following direction to the Clerks of the New York City Magistrates ’ Courts: “I am therefore directing the clerks of all the courts to refrain from submitting a bond for approval to any magistrate except in instances where the actual bondsman appears in court. An agent executing a bond for another bondsman is not to present a bond to a magistrate.”
This order was subsequently revoked by the Chief City Magistrate on January 28, 1958, after a dispute arising out of the refusal of a Magistrate to approve a bond for a defendant because of said Order No. 1. An article 78 proceeding was instituted to compel the Magistrate to approve the bond. The issues in that proceeding were never judicially determined. However, the stipulation of discontinuance betweeen the attorney for that petitioner and the attorney for respondent contained the following language: “whereas order No. 1 of the Chief City Magistrate has been rescinded effective February 1, 1958”. Prior to said stipulation the Chief City Magistrate had, on or about January 28, 1958, revoked said Order No. 1! By that revocation, plaintiffs here were impressed and satisfied that the Chief City Magistrate acknowledged and would accept the practices and procedures which plaintiffs employed in the conduct of their business. However, on September 22, 1958 the Chief City Magistrate refused, in Night Court, to approve two duly executed bail bonds which had been submitted to blm for approval by a duly authorized agent of plaintiff and who is duly licensed by the Superintendent of Insurance to engage in the bond business in criminal cases. The refusal to approve was stated as follows: “ I refuse to approve either bond. The Public Service Mutual Insurance Company (plaintiff) is a poor moral risk because of its inability and performance to secure the appearance of a bail defendant. I will continue to refuse to accept any bond written by this Surety until I am satisfied that its business will be conducted properly ”. Plaintiff takes issue with this personal criticism and points to its record of two years, nine months in the bail bond business, during which period it has written 50,421 bail bonds of which only 157 defendants were not produced.
Nevertheless, and despite attempts by plaintiff to discuss and co-operate, with a view to resolve the situation, with the *976 Chief Magistrate and public authorities, they have continued in their attitude, and plaintiff’s “executing agents” have not been permitted to execute bonds for other agents. On October 9, 1958 Order No. 8 was issued by the Director of the Office of Administration for the Magistrates’ Courts of the City of New York. It was directed to the Court Clerks as follows: “ Effective immediately, whenever a bail bond is presented to you or a duly designated assistant Court Clerk for approval, you will determine if the agent submitting the bond is the bondsman representing the company. If he is not the bondsman, but rather an executing agent, you will call this to the attention of the presiding magistrate when the bond is submitted to him. ’ ’ This, then, concisely is the factual status presented. It is plaintiff’s contention that defendants have, without warrant in fact or law, unjustifiedly refused approval of duly executed bail bonds presented for approval by a duly licensed and duly authorized agent of the plaintiff surety company and that such unwarranted interference by the defendants, particularly the Chief City Magistrate, has and is seriously prejudicing plaintiff’s business, is causing it great personal hardship and irreparable financial loss and that, since the acts of defendants are continuous with attendant continuing damage and loss to plaintiff’s business, defendants should be enjoined until the issues involved are ultimately adjudicated. It may be noted that the defendants, the Chief Magistrate and Magistrates McKennee and Vetrano, admit that the bulletin or order issued by the Chief Magistrate can in no way be considered a directive, being solely an expression of the Chief Magistrate; that he has neither the power nor authority to direct other Magistrates in respect of their judicial discretion. And yet this very order or bulletin of the Chief Magistrate is nevertheless being enforced by the Magistrates against plaintiff. Defendants ’ position, in the main, is predicated upon the position by the Chief Magistrate that plaintiff “ is a poor moral risk ’ ’ and that bonds presented by ‘1 executing agents ’ ’ are not acceptable and will not be approved. Plaintiff argues that section 554-b of the Criminal Code sets forth the area in which a Magistrate may exercise his discretion upon the presentation to him of a duly executed bail bond, but that the issue here posed is not the area of the Magistrate’s discretion but rather the abuse of his discretion in failing to comply with the law; further, that all of the agents are duly licensed and authorized to act in behalf of plaintiff surety company; that section 554-b circumscribes the situations in which a Magistrate may refuse to approve a bail bond and that the area of discre *977 lion does not include the attitude and acts of defendants taken in regard to plaintiff.
The opposing papers on this application are extensive and comprehensive in argumentation upon the facts and applicable law. After study of same, the court is convinced and persuaded that sufficient is presented by plaintiffs as would require the court’s intervention at this posture of the litigation to invoke equitable discretionary relief by way of the temporary injunction requested. This is in no wise to be construed as any intendment or imposition upon what the ultimate determination may be after a trial upon all the factual issues and applicable law. Suffice to say, if plaintiff does ultimately prevail, the damage to its business may be irretrievable. Moreover, the public is vitally interested for, by the defendants ’ actions, persons seeking bail are compelled to remain in custody longer than they normally would. Plaintiffs are entitled, at least, upon the present showing, to the interim relief requested.
It is patently evident from the issues presented that a justiciable controversy exists herein with respect to the rights of the plaintiffs under the facts as they come within the contemplation of sections 554-b and 554-c of the Code of Criminal Procedure and section 115 of the Insurance Law and related statutes. The issues joined herein over the construction and meaning of those statutes in the area of plaintiffs’ business requires determination and is properly brought in this form of declaratory action (Borchard, Declaratory Judgments [2d ed.], p. 279; Gair v. Peck, 6 Misc 2d 739, affd. 5 A D 2d 303). In the court’s view and discretion, and in the interests of preventing irreparable further injury to plaintiff, the status quo should be maintained pending the trial (Matter of Ohrbach v. Kirkeby, 3 A D 2d 269; Matter of Weinstein v. Swan-Finch Oil Corp., 7 Misc 2d 291) and same may be invoked in an action for declaratory judgment (County of Westchester v. Department of Health of City of N. Y., 297 N. Y. 491).
In light of the foregoing, the motion is granted in all respects. The amount of the bond will be fixed in the order to be settled hereon, at which time suggestions as to the amount thereof may be presented. In the interests of justice and of the public, an early trial should be had. The order hereon shall contain appropriate provision to that effect and the required calendar fees shall be paid by plaintiff.
Settle order.